UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WADNER TRANCHANT,

              Plaintiff,

vs.                              Case No.  2:10-cv-233-FtM-29DNF

THE RITZ CARLTON HOTEL COMPANY, LLC,
doing business as the Ritz Carlton
Naples, EDWARD V. STAROS,

              Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on defendants' Motion to Dismiss or, in the Alternative, to Stay Proceedings and to Compel Arbitration (Doc. #8) filed on May 24, 2010.  Plaintiff filed a Response to defendants' Motion (Doc. #26) on September 3, 2010. With the permission of the Court, defendants filed a Reply (Doc. #29) on September 21, 2010.  For the reasons set forth below, the proceedings shall be stayed and arbitration compelled.

I.

Plaintiff alleges the following facts in the Amended Complaint (Doc. #7): Plaintiff is an employee of defendant The Ritz Carlton Hotel Company, LLC (Ritz) and a black American resident of Haitian origin.  The Ritz, acting through its Vice President and Managing Director, defendant Edward V. Staros, created a work environment that was hostile or abusive to plaintiff due to plaintiff's race. (Id., pp. 2-4.)  This hostile or abusive work environment was

created by acts that the defendants took in furtherance of a guest's stated preference to not be served by people of color or with foreign accents. (Id.)  In particular, defendants informed the serving staff of the guest's prejudice and prevented plaintiff from providing service to the guest. (Id.)  Plaintiff claims that these actions constitute a violation of 42 U.S.C. § 1981 in that plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of his employment. (Id., p. 4.) Plaintiff seeks compensatory and punitive damages from both defendants. (Id., p.4.)

Defendants seek to dismiss the Amended Complaint, or in the alternative, stay these proceedings and compel arbitration based upon the arbitration provision contained in plaintiff's employee agreement.

## II.

On June 28, 2005, plaintiff entered into an employee agreement which contains an arbitration provision. (Id., pp. 2-3; Doc. #8-1, pp. 9-10.)  Under the terms of the agreement, plaintiff was to engage in a three-stage "Open Appeal & Issue Resolution Process" (Open A.I.R. Process) whenever he had a workplace concern or issue. (Doc. #8-1, p. 6.)  Stage One is the "open door process", where an employee attempts to resolve his or her workplace issue informally. The employee can discuss the issue with his immediate supervisor, and if unsatisfied with the result, the next level of management,

and then finally, the General Manager.   At any time in this
process, the employee can bypass these steps and go directly to the
Director of Human Resources.  (<u>Id.</u>)  If the employee's issue is not
resolved in Stage One, he or she may participate in Stage Two of
the process.   In Stage Two, the employee's problem is presented to
and decided by a "peer review" panel of employees in a private,
confidential hearing.  (<u>Id.</u>, p. 7.)  Stage Three of the Open A.I.R.
Process is "Arbitration," and reads as follows:

**Stage Three: Arbitration**

I must request Arbitration if I wish to challenge my
termination for any reason or for management decisions
that I believe are discriminatory or retaliatory.
Arbitration is a process in which my workplace issue is
presented to a neutral third party, the arbitrator, for
a final and binding decision.  The arbitrator, who is
provided by the American Arbitration Association ("AAA")
runs the privately held proceedings.  My Arbitration
shall be governed by the AAA's Rules for Employee Dispute
Resolution.

**What happens at Arbitration?**

My request for Arbitration is filed with a local AAA
office.  The AAA office offers a list of qualified local
arbitrators and each party numbers the list in order of
preference.  An arbitrator is selected based upon the
parties' preferences.  AAA arranges a hearing date.  At
the hearing, both The Ritz-Carlton and I have an
opportunity to present our respective positions on my
workplace issue.  Testimony is given, documents are
exchanged, and witnesses are questioned and cross-
examined.  The arbitrator will make a decision after both
The Ritz-Carlton and I have presented our evidence and
arguments.  If the arbitrator rules in my favor, I may be
reinstated and/or awarded additional remedies consistent
with the laws governing The Ritz-Carlton.

**How do I apply for Arbitration?**

To apply for Arbitration I must complete an Arbitration Request Form.  I will be required to pay a $50.00 fee to contribute to the related expenses.  I may consult an attorney or another advisor of my choice to participate in the Arbitration at my own expense.

The arbitrator shall be authorized to award whatever remedies are allowed by law.

I may request an Arbitration hearing within one year of the management decision I wish to appeal.

I understand that by signing this agreement, I am waiving the ability to file a lawsuit to challenge any termination or management decision that is covered by this Arbitration provision.  For any issues that are not covered by the Arbitration provision, I agree to exhaust every other step of the Open A.I.R. Process (as applicable) before filing a lawsuit.  The Ritz-Carlton agrees to extend applicable statute of limitations and any other time-conditional filing requirements for the length of time that it takes to pursue the Open A.I.R. Process.  Nothing in this agreement precludes me from filing a statutory complaint with a government enforcement agency where I have a non-waivable right to file such a complaint.

(Id., p. 9.)

Based upon this arbitration provision, defendants contend that plaintiff's claims must be arbitrated.  Plaintiff raises four arguments in response:  (1) the scope of the arbitration provision does not encompass plaintiff's race discrimination claim; (2) the arbitration provision is not supported by adequate consideration; (3) the arbitration provision is unconscionable and should not be enforced; and (4) if the Court compels arbitration, the lawsuit should be stayed, not dismissed.  The Court will address each of plaintiff's arguments in turn.

**III.**

Under the Federal Arbitration Act (FAA), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." <u>Caley v. Gulfstream Aerospace Corp.</u>, 428 F. 3d 1359, 1367 (11th Cir. 2005). "Compulsory arbitration agreements are now common in the workplace, and it is not an unlawful practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment discrimination statutes." <u>Id.</u> Indeed, there is a "strong federal preference for arbitration of disputes," which should be enforced where possible. <u>Musnick v. King Motor Co.</u>, 325 F.3d 1255, 1258 (11th Cir. 2003).

Despite the liberal federal policy favoring arbitration, nothing in the FAA authorizes a court to compel arbitration if there is no agreement to arbitrate. <u>E.E.O.C. v. Waffle House, Inc.</u>, 534 U.S. 279, 289 (2002); <u>AT&T Techs. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 648 (1986). Therefore, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. . . . Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985).

**A.  The Scope of the Arbitration Provision Covers Plaintiff's Claim**

When deciding whether the parties have agreed to arbitrate certain matters, courts apply ordinary state-law principles that govern the formation of contracts. Am. Exp. Fin. Advisors, Inc. v. Makarewicz, 122 F.3d 936, 940 (11th Cir. 1997); Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1061 (11th Cir. 1998). Florida law applies here, since the arbitration provision was executed in Florida, plaintiff's claim arose in Florida, and neither the employee agreement nor the arbitration provision itself includes a contrary choice-of-law clause. See Paladino, 134 F.3d 1061 n.1; Williams v. Eddie Acardi Motor Co., 3:07-cv-782-J-32JRK, 2008 WL 686222 at *4 (M.D. Fla. Mar. 10, 2008).

Under Florida law, the parties' intent controls.  The contract's language is the best evidence of the parties' intent, and a court should look to the contract's plain meaning when interpreting it.  Royal Oak Landing Homeowner's Ass'n, Inc. V. Pelletier, 620 So. 2d 786, 788 (Fla. 4th DCA 1993); Herpich v. Estate of Herpich, 994 So. 2d 1195, 1197 (Fla. 5th DCA 2008). "[A]ny doubt concerning the scope of the arbitration clause should be resolved in favor of arbitration."  Hirshenson v. Spaccio, 800 So. 2d 670, 674 (Fla. 5th DCA 2001).

Plaintiff argues that the arbitration provision does not cover the dispute alleged in the Complaint.  The Court concludes otherwise.  The plain meaning of the arbitration provision clearly

mandates the arbitration of any management decision which the employee believes is discriminatory. (<u>See</u> Doc. #8-1, p. 9 ("I must request Arbitration if I wish to challenge my termination for any reason or for management decisions that I believe are discriminatory or retaliatory.").)[1]   Plaintiff claims that defendant Staros' decision to not allow him to serve a certain guest was discriminatory. (Doc. #7; Doc. #29-1, p. 28.)   At the time defendant Staros made the decision, he was the Vice President and Managing Director of defendant Ritz.   (<u>Id.</u>)   Every discriminatory action of which plaintiff complains was taken in furtherance of the decision made by Staros.

Therefore, the Court concludes that the scope of the subject arbitration provision encompasses plaintiff's § 1981 claim.

## B. The Arbitration Clause Is Supported by Sufficient Consideration

Next, plaintiff asserts that the employee agreement is unenforceable because it lacks consideration and, therefore, the arbitration provision contained within the agreement is also unenforceable. (Doc. #26, p. 14.)   Defendant responds that plaintiff was employed by the Ritz on an "at-will" basis and that plaintiff received sufficient consideration in the form of his

---

[1]The Court is mindful of plaintiff's reading of the Open A.I.R. Process, whereby Stage Three can only follow Stage Two. However, the possibility that the parties thereby implied that only "disciplinary or punitive" management decisions would be subject to arbitration is contrary to the plain meaning of the arbitration provision.

continued employment.  (Doc. #29, p. 9.)  Additionally, defendants assert that plaintiff was given the right to participate in the Open Door and Peer Review processes and that this right served as additional consideration because defendants were not obligated to provide such right to their employees.  (Id.)

 To determine whether the arbitration provision was supported by sufficient consideration, the Court looks to Florida law.  See Caley, 428 F.3d at 1368 ("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists."); S.D.S. Autos, Inc. v. Chrzanowski, 976 So. 2d 600, 605 (Fla. 1st DCA 2007)(noting that defenses to contract enforcement, including lack of consideration, may render an arbitration provision within the contract unenforceable).

In Florida, one party's promise to submit its claims to arbitration typically provides sufficient consideration to support the other party's promise to submit its claims to arbitration. See, e.g., Santos v. Gen. Dynamics Aviation Servs. Corp., 984 So. 2d 658, 661 (Fla. 4th DCA 2008); Bhim v. Rent-A-Center, 655 F. Supp. 2d 1307, 1312-13 (S.D. Fla. 2009) ("Mutually binding promises to arbitrate provide consideration for one another, and give rise to an enforceable arbitration agreement.").  However, mutual promises to arbitrate are not the only form of consideration

sufficient to support an arbitration provision.[2]  Under Florida law, consideration can be established by performance or a promise to perform.  See Palm Lake Partners II, LLC v. C&C Powerline, Inc., 38 So. 3d 844, 851 n. 10 (Fla. 1st DCA 2010); see also Murry v. Zynyx Mktg. Commc'ns, Inc., 774 So. 2d 714, 716 (Fla. 3d DCA 2000)(noting that "so-called" requirement of mutuality has been widely discredited and any such defect is cured by actual performance of parties); Ballou v. Campbell, 179 So. 2d 228, 230 (Fla. 2d DCA 1965)(noting that consideration includes a promise or a specific act or forbearance).  Additionally, "[a] promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do."  Cintas Corp. No. 2 v. Schwalier, 901 So. 2d 307, 309 (Fla. 1st DCA 2005).

In this case, the Ritz was under no pre-existing duty to continue plaintiff's employment, as plaintiff was employed on an "at-will" basis.  (Doc. #29, p. 8).  Here, the Ritz's continued

---

[2]Plaintiff relies on Hull v. Norcom, Inc., 750 F.2d 1547 (11th Cir. 1985), for the proposition that the consideration exchanged for one party's promise to arbitrate **must be** the other party's promise to arbitrate at least some specified class of claims.  Id. at 1550.  However, the Eleventh Circuit in Hull was interpreting the laws of the state of New York.  Here, Florida law applies.  In Florida, where there is sufficient consideration to support the entire contract, the arbitration provision is not void for lack of mutuality of obligation.  See Avid Eng'g, Inc. v. Orlando Marketplace Ltd., 809 So. 2d 1, 4 (Fla. 5th DCA 2001). Additionally, the holding in Hull has been called into doubt by Sablosky v. Edward S. Gordon Co., 535 N.E.2d 643 (N.Y. 1989).

employment of plaintiff provided sufficient consideration to support the employment agreement and the arbitration provision contained therein.  See <u>City of S. Miami v. Dembinsky</u>, 423 So. 2d 988, 989-90 (Fla. 3d DCA 1982)(holding that city's continued employment of at-will police officer constitutes "forbearance" and thus adequate consideration to support promises made in connection with employment); <u>Criss v. Davis</u>, 494 So. 2d 525, 27 (Fla. 1st DCA 1986)(holding that at-will employee's continued employment, payment of salary and commissions was adequate consideration to support non-compete agreement); <u>see also</u> <u>Avid Eng'g, Inc. v. Orlando Marketplace Ltd.</u>, 809 So. 2d 1, 4 (Fla. 5th DCA 2001)(holding that where there is sufficient consideration for the entire agreement, that consideration supports the arbitration provision as well).

Therefore, the Court concludes that the arbitration provision is supported by sufficient consideration.  Having found that plaintiff's continued employment constitutes sufficient consideration, the Court need not address defendants' alternative argument that permission to participate in the "Open Door" and "Peer Review" processes constitutes consideration for the parties' agreement.

**C.  The Arbitration Provision Is Not Unconscionable**

To determine whether a contract is unconscionable under Florida law, a court must examine the contract itself and the facts surrounding its making for both procedural and substantive

unconscionability.  <u>Murphy v. Courtesy Ford LLC</u>, 944 So. 2d 1131,
1134 (Fla. 3d DCA 2006); <u>Woebse v. Health Care & Ret. Corp. of Am.</u>,
977 So. 2d 630 (Fla. 2d DCA 2008).[3]

     *1.    The  Arbitration  Provision  Is  Not  Procedurally*
*Unconscionable*

     To determine whether a contract is procedurally unconscionable
under Florida law, courts must look to:

> (1) the manner in which the contract was entered into;
> (2) the relative bargaining power of the parties and
> whether the complaining party had a meaningful choice at
> the time the contract was entered into; (3) whether the
> terms were merely presented on a "take-it-or-leave-it"
> basis; and (4) the complaining party's ability and
> opportunity to understand the disputed terms of the
> contract.

<u>Pendergast</u>, 592 F.3d 1119, 1135 (11th Cir. 2010).

     The Court agrees with plaintiff that the disparity between the
parties' bargaining power is indisputable, as The Ritz-Carlton is
a large corporation and plaintiff is merely a waiter working in one
of the Ritz hotels.   Thus, the second factor in the Court's
procedural   unconscionability   analysis   "militates   toward
unconscionability."   <u>Bhim</u>, 655 F. Supp at 1315.   However, all of

---

     [3]The Court is aware of the conflict among Florida state courts
regarding the analytical approach to unconscionability, which was
certified to the Florida Supreme Court by the Eleventh Circuit in
<u>Pendergast v. Sprint Nextel Corp.</u>, 592 F.3d 1119 (11th Cir. 2010).
However, the conflict recognized by the <u>Pendergast</u> court has no
bearing on the ultimate resolution of defendants' Motion because
the Court concludes that the arbitration provision in question is
not unconscionable regardless of whether the Court applies a
"balancing," "sliding scale," or "independent analysis" approach.

the other factors point the other way.  There was nothing in the manner in which the employee agreement was entered into that would support a finding of procedural unconscionability.  The record shows that the Ritz required its employees to attend a one-hour class about the agreement, which was offered in both English and Creole, the plaintiff's native language.  (Doc. #26-1, pp. 15-16.) At this class, the agreement was read to the employees and the employees had the opportunity to ask questions about it.  (<u>Id.</u>, p.19.)  Those who were not ready to sign the agreement were able to take it home with them for further review.  (<u>Id.</u>, p. 18.)  While plaintiff states that he does not recall attending the class or having the arbitration provision explained to him, he admits that the classes were offered.  (Doc. #26, p. 19.)  Additionally, he admits that  management and Human Resources were available to answer any questions he might have had about the agreement.  (Doc. #29-1, pp. 97-98.)

The record also suggests that plaintiff was fully capable of reading and understanding the terms of the agreement, including the arbitration provision, as it was written entirely in simple, plain English, as opposed to "legalese," (Doc. #8-1), and the plaintiff can read and understand English.  (Doc. #29-1, pp. 15, 17, 64-67.) Florida law imposes upon a party the "duty to learn and know the content of a proposed contract before he signs and delivers it [as he] is presumed to know and understand its contents, terms and

conditions." <u>Sabin v. Lowe's of Fla., Inc.</u>, 404 So. 2d 772, 773 (Fla. 5th DCA 1981).

Finally, it is not clear whether the agreement was offered on a "take-it-or-leave-it" basis, but even if it was, plaintiff has not shown that he lacked employment alternatives if he chose to "leave it." <u>Bhim</u>, 655 F. Supp. 2d at 1315; <u>Caley</u>, 427 F.3d at 1364 (affirming order compelling arbitration even though employer expressly stated that arbitration policy would be "a condition of continued employment"). Thus, the Court finds that the arbitration provision is not procedurally unconscionable.

*2.   The Arbitration Provision Is Not Substantively Unconscionable*

Substantive unconscionability focuses on the terms of the agreement itself and whether the terms of the contract are "unreasonable and unfair." <u>Powertel Inc. v. Bexley</u>, 743 So. 2d 570, 574 (Fla. 1st DCA 1999). A contract is substantively unconscionable if its terms "are so 'outrageously unfair' as to 'shock the judicial conscience.'" <u>Bhim</u>, 655 F. Supp. 2d at 1313 (quoting <u>Gainesville Health Care Ctr., Inc. v. Weston</u>, 857 So. 2d 278, 285 (Fla. 1st DCA 2003)). "In determining whether an agreement or provision is substantively unconscionable, courts consider whether the disputed terms limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to

the arbitration of disputes." <u>EEOC v. Taco Bell of Am., Inc.</u>, No. 8:06-cv-1792, 2007 WL 809660 at *1 (M.D. Fla. 2007)(citing <u>Palm Beach Motor Cars Ltd. v. Jeffries</u>, 885 So. 2d 990, 992 (Fla. 4th DCA 2004)); <u>see also</u> <u>Powertel</u>, 743 So. 2d at 576 ("One indicator of substantive unconscionability is that the agreement requires the customer to give up other legal remedies.").

Plaintiff argues that the arbitration provision is substantively unconscionable because it does not require both parties to arbitrate their disputes and it fails to provide for discovery.  Florida courts have held that where one party is bound to arbitration of its claims but the other is not, there can be some substantive unconscionablity. <u>Palm Beach</u>, 885 So. 2d at 992; <u>Hialeah Auto., LLC v. Basulto</u>, 22 So. 3d 586, 591 (Fla. 3d DCA 2009); <u>Bellsouth Mobility, LLC v. Christopher</u>, 819 So. 2d 171, 173 (Fla. 4th DCA 2002).  However, in all those cases there were additional factors which rendered the agreement unenforceable. This is not such a case.  First, the arbitration provision is limited in scope.  It does not require employees to arbitrate all claims; rather, it requires employees to arbitrate only those claims relating to termination or management decisions believed to be discriminatory or retaliatory.  Second, the agreement does not require plaintiff to surrender any of the claims or damages that he could have sought in court.  It merely substitutes the forum for

-14-

deciding those claims and damages.[4]   Third, the agreement does not impose substantial costs on the plaintiff, as it requires him to pay only $50 to begin the arbitration process.   Finally, the agreement does provide for discovery to the extent that the American Arbitration Association's Employment Arbitration Rules provide for discovery.[5]   Therefore, the arbitration provision does not strike the Court as outrageously unfair or otherwise shock the judicial conscience.   Thus, it is not substantively unconscionable.

**D.  Plaintiff's Claim Is Stayed, Not Dismissed**

In accordance with both the relevant provisions of the FAA and prevailing Eleventh Circuit precedent, the proceedings shall be stayed, not dismissed.   See <u>Bender v. A.G. Edwards & Sons, Inc.</u>, 971 F.2d 698, 699 (11th Cir. 1992); <u>see also</u> 9 U.S.C. § 3.

Accordingly, it is now

**ORDERED**:

1.  Defendants' Motion to Dismiss or, in the Alternative, to Stay Proceedings and to Compel Arbitration (Doc. #8) is **GRANTED** in the alternative to the extent that the proceedings are stayed and arbitration compelled.

2.  The case is hereby **stayed** pending notification by the parties that plaintiff has exhausted arbitration and the stay is

---

[4]<u>See</u> <u>Avid Eng'g</u>, 809 So. 2d, at 5 (upholding one-way arbitration provision which did not limit legal remedies).

[5]<u>See</u> AAA Rules, available at: http://www.adr.org/

due to be lifted or the case is due to be dismissed.  The Clerk shall terminate all deadlines and motions, and administratively close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___31st___ day of March, 2011.

JOHN E. STEELE
United States District Judge


Copies:
Counsel of record